IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALINA R., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-1661-M-BN |
| | § | |
| ANDREW SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Salina R. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Background**

Plaintiff alleges that is she disabled as a result of major depression disorder, severe anxiety, chronic fatigue, mood disorder, and post traumatic stress disorder ("PTSD"). *See* Administrative Record [Dkt. No. 13-1] ("Tr.") at 21, 277. Alleging an onset date of June 9, 2015, Plaintiff filed an application for supplemental social security income, which the Commissioner initially denied – and denied again on reconsideration. *See id.* at 140, 150. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). *See id.* at 156. That hearing was held on November

6, 2017. *See id.* at 30. At the time of the hearing, Plaintiff was 39 years old and had completed high school. *See id.* at 23. Plaintiff has not engaged in substantial gainful activity since her onset date of June 9, 2015. *See id.* at 14. The date until which Plaintiff will be insured is December 31, 2020. *See id.* at 12.

The ALJ found that Plaintiff was not disabled. *See id.* at 24. Although the medical evidence established that Plaintiff suffered major depression disorder, severe anxiety, chronic fatigue, mood disorder, and post traumatic stress disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 18. The ALJ further determined that Plaintiff had the residual functional capacity to perform

> less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), such that the claimant is able to lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours of an eight-hour workday; sit for six hours of an eight-hour workday with normal breaks. The claimant is limited to no climbing of ladders, ropes[,] or scaffolds, and she needs to avoid exposure to extremes of heat and unprotected heights. Mentally, the claimant is limited to performing simple, routine tasks and simple decision making, in an environment that involves few, if any, workplace changes. Interaction with supervisors, coworkers, and the public is limited to occasional, and she requires work with no strict productions quotas.

*See id.* at 20. As such, the ALJ found that Plaintiff was not disabled under Medical-Vocational Guidelines because, given her age, education, and exertional capacity for work, she was capable of working as a ticket printer and tagger, a retailer marker, or a hardware assembler – jobs that exist in significant numbers in the national economy. *See id.* at 28.

2

Plaintiff appealed the decision to the Appeals Council, which affirmed the ALJ's decision. *See id.* at 1-5; 247.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on the grounds that the ALJ failed to apply the 20 C.F.R. § 404.1527(c) factors before rejecting Plaintiff's treating source opinion. *See* Dkt. No. 17 at 24.

The undersigned concludes that the hearing decision should be reversed and remanded.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552-55 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain

3

whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant

can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

5

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff makes a single claim that compels remand – the ALJ failed to apply the 20 C.F.R. § 404.1527(c) factors before rejecting Plaintiff's treating source opinion. *See* Dkt. No. 17 at 24.

In *Newton v. Apfel*, the United States Court of Appeals for the Fifth Circuit held that "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." 209 F.3d 448, 455 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id.* (internal quotations omitted). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Id.* (internal quotations omitted).

But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456; *accord Hernandez v. Barnhart*, 202 F. App'x 681, 682-83 (5th Cir. 2006) ("Additionally, this court has held that considerable weight can be given to the opinions of non-treating

6

physicians, especially when the treating physician's evaluation is unsupported by the evidence. An ALJ can discount the weight of the opinions of treating physicians relative to the opinions of others if the treating physician's opinion and diagnosis is unsupported." (citing *Newton*, 209 F.3d at 456; *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995)).

Social Security Administration ("SSA") regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives the claimant's] treating source's opinion," and list factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). Specifically, this regulation requires consideration of: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R. § 404.1527(c). The Court of Appeals has since explained that "[t]he *Newton* court limited its holdings to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009); *accord Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017).

As a result, when there are competing opinions of treating or examining physicians, the ALJ does not need to consider each Section 416.927(c) factor when declining to defer to the treating physician's opinion. *See Qualls,* 339 F. App'x at 465;

7

*see also Kneeland*, 850 F.3d at 760 ("'[a]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [20 C.F.R. § 416.927(c)(2)]") (quoting *Newton*, 209 F.3d at 453) (emphasis in both opinions).

But the ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" otherwise is not given to a treating physician's medical opinions. *Doucet v. Colvin*, No. 15-cv-2115-B-BN, 2016 WL 1296853, at *4 (N.D. Tex. Mar. 14, 2016), *rec. adopted*, 2016 WL 1273496 (N.D. Tex. Apr. 1, 2016); *see also* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-cv-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

Dr. Helene Alphonso was Plaintiff's treating physician, as evidenced by the record. Following Plaintiff's first consult with Dr. Alphonso in May 2016, "Dr. Alphonso diagnosed [Plaintiff] with major depression disorder[,] and recurrent and severe post-traumatic stress disorder (PTSD)." Dkt. No. 17 at 5. When Plaintiff presented in July 2016 reporting increased depression, inability to sleep, and continued nightmares, Dr. Alphonso and Dr. Jaskirit Gill "agreed to increase the Seroquel dosage, but continued the other medication at their present dosage." *Id*. Plaintiff again returned to the

8

hospital in September 2016 and December 2016 for follow-up visits with Dr. Alphonso and Dr. Gill. *See id.*

In April 2017, following claims of increased depression following the death of her nephew from leukemia and her father's cancer diagnosis, Dr. Alphonso and Dr. Radha Tripuraneni added Prozac to Plaintiff's medications. *See id.* at 5-6. Dr. Alphonso later increased the Prozac and Seroquel dosages in May 2017, while Plaintiff continued follow-up visits with the residents at the hospital, whom Dr. Alphonso supervised. *See id.* at 6. In August 2017, Dr. Alphonso decided to admit Plaintiff to the hospital until September 6, 2017, following the death of her then-girlfriend. *See id.*

Plaintiff argues that Dr. Alphonso's opinion constituted a medical opinion within the meaning of the regulation. Under 20 C.F.R. § 416.927, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927. Plaintiff asserts that Dr. Alphonso's opinion constituted a medical opinion because she "is an acceptable medical source"; she "was the supervising psychiatrist for Plaintiff ... [during] multiple office visits"; and "the statement reflects Dr. Alphonso's opinion about the nature and severity Plaintiff's impairments" and included the prognosis that Plaintiff's

> mental impairments would interrupt her functioning from 50% to 100% of the day on a sustained basis with responding appropriately to supervisors and coworkers, respond to usual work stresses and situations; and deal with changes in a routine work setting. Dr. Alphonso further

9

> opined [that Plaintiff] would either miss work or leave work early over 10 days a month.

Dkt. No. 17 at 16.

Notwithstanding Dr. Alphonso's recommendation, the ALJ determined that Plaintiff had the residual functional capacity to perform

> less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), such that the claimant is able to lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours of an eight-hour workday; sit for six hours of an eight-hour workday with normal breaks. The claimant is limited to no climbing of ladders, ropes[,] or scaffolds, and she needs to avoid exposure to extremes of heat and unprotected heights. Mentally, the claimant is limited to performing simple, routine tasks and simple decision-making, in an environment that involves few, if any, workplace changes. Interaction with supervisors, coworkers, and then public is limited to occasional, and she requires work with no strict productions quotas.

*See id.* at 20. The ALJ noted that

> [t]he statement issued by Dr. Alphonso that the claimant is not able to work and that she was permanently disabled is not entitled to weight as a medical opinion, because it speaks to an issue that is reserved for the Commissioner under SSR 96-5p. Little weight [is given] to the opinions provided in the questionnaire by Dr. Alphonso. She is a treating provider, her own treatment notes, along with the balance of the treatment history, tend to show that when the claimant complies better with recommendations of her psychiatrist and therapists, symptoms tend to improve. The catastrophic limitations that Dr. Alphonso issues appear to be reflective of periods with the claimant using alcohol and/or substances excessively (periods of poor compliance).

Tr. at 22.

Plaintiff asserts that "there is an over-arching and foundational error in the ALJ's analysis of Dr. Alphonso's opinion" because it fails "recognize the special deference which must be accorded treating source opinions when they are not accorded

10

controlling weight." Dkt. No. 17 at 17. She argues that "[t]he ALJ fails to recognize that even when a treating source opinion is not accorded controlling weight, that the opinion is still entitled to special defenses, as described above. The ALJ's failure to explicitly acknowledge this crucial legal principle, confirmed by both binding circuit precedent and SSA policy, strongly suggest that he did not apply the proper legal standard in evaluating that treating source opinions here." *Id*.

The undersigned agrees. *See Newton*, 209 F.3d 455 (holding that a "treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence"). And, similar to the facts in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Newton*, 209 F.3d at 458.

Here, the ALJ rejected Plaintiff's treating physician's opinions without an existing controverting treating or examining physician opinion on the matters of Plaintiff's ability to sit or stand for extended periods of time.

"Courts in this district do not always require the ALJ to discuss each of the Section 404.1527(c)(1) factors if it is clear that the ALJ has nevertheless considered the factors and the ALJ's decision to give no weight to the treating physician constitutes 'good cause.'" *Gerken v. Colvin*, No. 3:13-cv-1586-BN, 2014 WL 840039, at *6 (N.D. Tex. Mar. 4, 2014). But, in this case, the ALJ did not provide "good cause" for rejecting Dr. Alphonso's opinion, which was supported by the medical record. "Good cause does not

11

exist when the ALJ has not considered all relevant evidence of record." *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 911 (N.D. Tex. 2008). As such, under *Newton*, the ALJ was required to consider each of the Section 404.1527(c) factors prior to rejecting Dr. Alphonso's opinions.

The Commissioner argues that, "[i]n making [the] RFC finding, the ALJ stated that she considered the entire record, including, but not limited to, proper consideration of opinion evidence, specifically citing 20 C.F.R. §§ 404.1527 and 416.927." Dkt. No. 18 at 2. But this statement, on its own, is not sufficient to satisfy *Newton. See Nicaragua v. Colvin*, No. 3:12-cv-2109-G-BN, 2013 WL 4647698, at *6 (N.D. Tex. Aug. 29, 2013). The ALJ's decision fails to show that he conducted a detailed analysis of Dr. Alphonso's opinions against the requirements of Section 404.1527(c). The ALJ did not even enumerate the Section 404.1527(c) factors, let alone discuss them in any sufficient level of detail. *See Tolbert v. Astrue*, No. 4:10-cv-349-L, 2011 WL 3759049, at *7 (N.D. Tex. Aug. 24, 2011).

The ALJ's failure to consider the Section 404.1527 factors when rejecting Dr. Alphonso"s opinions was prejudicial error. *See Gerken*. 2014 WL 840039, at *6; *Nicaragua*, 2013 WL 4647698, at *6; *Thompson v. Colvin*, No. 3:15-CV-2262-BN, 2016 WL 1555795, at *4 (N.D. Tex. Apr. 18, 2016); *Lee v. Colvin*, No. 3:13-CV-4598-BN, 2014 WL 6085044, at *4 (N.D. Tex. Nov. 14, 2014). It is the ALJ's responsibility to weigh the evidence, and the undersigned is unable to say what the ALJ would have done had he weighed all relevant evidence of record. Dr. Alphonso's opinions included significant limitations beyond those that the ALJ recognized in determining both Plaintiff's

residual functional capacity and her ability to engage in any form of substantial gainful activity. Had the ALJ given proper consideration to the treating physician's records and assessment of Plaintiff's ability to engage in work-related activities, the ALJ might have reached a different decision as to disability. This is especially true in light of the fact that the burden lies with the Commissioner at Step 5 to identify gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *see also Myers*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider all evidence from a treating source and failed to present good cause for rejecting it); *Newton*, 238 F.3d at 621-22 (holding that remand was required when the ALJ failed to consider each of the Section 404.1527 factors before declining to give weight to the opinions of the claimant's treating specialist); *Harris v. Astrue*, No. 3:11-cv-1089-M-BH, 2012 WL 4442303, at *15 (N.D. Tex. Sept.7, 2012), *rec. adopted*, 2012 WL 4458405 (N.D. Tex. Sept. 26, 2012).

As such, the undersigned finds and concludes that ALJ's failure to consider the Section 404.1527 factors in connection with Dr. Alphonso's opinion was prejudicial error and that this matter should be reversed and remanded.

### Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[1]

---

[1] By recommending a remand for further administrative proceedings, the undersigned does not suggest that Plaintiff is or should be found disabled.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 31, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE